**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 29 2012, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

<u>APPELLANT PRO SE:</u>

**LAURA RODRIGUEZ**
Henderson, Nevada

<u>ATTORNEY FOR APPELLEE:</u>

**KRISTINA L. GARZA**
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| L.R., | ) |
| | ) |
|     Appellant, | ) |
| | ) |
|        vs. | )   No.  45A04-1110-DR-526 |
| | ) |
| J.R., | ) |
| | ) |
|     Appellee. | ) |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable Michael A. Sarafin, Magistrate
The Honorable George C. Paras, Judge
Cause No. 45C01-0911-DR-961

**June 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

The trial court issued its final decree of dissolution of the marriage of J.R. ("Husband") and L.R. ("Wife"), ordering Husband to pay $368 per week in child support, dividing the marital property, finding Wife in contempt for willfully violating its provisional order, finding neither Husband nor his counsel in contempt, and ordering the parties to pay their own attorneys' fees. Wife raises five issues for our review, which we reorder, consolidate, and restate as: 1) whether the trial court erred in finding Wife in contempt; 2) whether the trial court's child support determination was in error; 3) whether the trial court's division of marital property was in error; and 4) whether the trial court erred by not finding Husband in contempt or sanctioning his attorney. Concluding the trial court's conclusions were not in error, we affirm.

## Facts and Procedural History

Husband and Wife were married in 1994 and had four children ("the Children"). In early 2009, Wife spontaneously moved to Nevada and took the Children with her. Husband was not notified of their move until after they arrived in Nevada. In late 2009, Husband filed several documents in an Indiana trial court, including a verified petition for legal separation of marriage. On January 16, 2010, Wife was served with Husband's verified petition for provisional hearing, verified petition for legal separation of marriage, alias summons, and notice of hearing in proceedings for legal separation. On January 20, 2010, in Nevada, Wife filed for divorce, seeking sole legal custody, primary physical custody, child support from

2

Husband, spousal support or alimony, division of marital property and debt, attorney's fees and costs, and various other remedies.

On January 21, 2010, the trial court in Indiana held a provisional hearing and by its January 25, 2010 order, it awarded Husband with temporary, sole custody of the Children; ordered Wife to release the Children into Husband's care by January 28, 2010, and to begin paying $80.55 per week in child support; and ordered the parties to file their taxes jointly. Wife did not appear for the hearing. Husband subsequently flew to Nevada on January 28, 2010, and attempted to take the Children into his care and return to Indiana. Husband obtained the assistance of the local police department, but Wife refused to release the Children to Husband. Thereafter, on February 9, 2010, a Nevada trial court issued an order granting Wife temporary primary physical custody and joint legal custody of the Children and stating the Nevada trial court would confer with the Indiana trial court regarding jurisdiction.

The Nevada and Indiana trial courts conducted a telephonic conference in March 2010, and sometime thereafter Wife and Husband stipulated that Nevada would maintain jurisdiction over custody and parenting time of the Children and Indiana would have jurisdiction over marital property distribution and child support. The Nevada trial court awarded Wife primary physical custody subject to Husband having parenting time, and the Indiana trial court provisionally ordered Husband to pay child support in the amount of $317 per week, which was based on a weekly gross income of $1,155.85 for Husband and imputed minimum wage income of $290 per week for Wife.

3

In late 2010, Husband filed a verified petition for contempt citation, requesting the trial court hold Wife in contempt for willfully and deliberately failing to pay indebtedness associated with the parties' Ford Expedition and for not filing taxes jointly, as the Indiana trial court ordered. Husband also requested the trial court order Wife to reimburse him for attorney's fees. On February 2, 2011, Wife filed a contempt citation against Husband and his counsel, Kristina Garza, claiming Husband should be held in contempt for an alleged child support arrearage, failing to provide his 2009 and 2010 tax returns as ordered by the Nevada trial court, failing to adhere to all local rules, and arguing Garza should be sanctioned for failing to timely exchange financial declaration forms or attempt to amicably resolve issues with Wife.

In its February 9, 2011 order, the trial court reaffirmed its provisional order regarding division of marital property, ordered Wife to return the parties' Ford Expedition to Husband within fourteen days, ordered the parties to exchange financial declaration forms in full compliance with the local rules and finish all other discovery by the end of March, continued Husband's petition for contempt to give Wife an opportunity to return the Ford Expedition, and ordered the parties to attend a mandatory settlement conference hosted by Garza.

In June the parties attended a final hearing, and evidence was submitted summarily, by agreement. In September 2011, the trial court issued its final decree of dissolution of marriage, finding and concluding:

## II. Child Support
* * *
11. For purposes of determining Husband's current child support obligation, based on the evidence before the Court at the Final Hearing, [Husband]'s gross

weekly income is $[1,336.38]¹, such amount derived by averaging Husband's last three (3) years of income from 2008 of $71, 998.00, from 2009 of $53,091.00, and from 2010 of $83,385.98. Such average is equitable in light of the evidence presented of the fluctuations that Husband may experience due to conditions of his employment including fluctuations in work hours, his employer's policy as to layoff of employees, and productivity and demand associated with the motor vehicles made at the Ford plant at which Husband is employed.

12. In determining Wife's gross weekly income for purposes of child support, the Court determines that Wife is voluntarily underemployed as she chooses not to work and does not have any disability from preventing her from working [sic]. According to Wife's testimony, she does not work so that she can provide care for her elderly mother who is suffering from Alzheimer's disease, but there is nothing preventing her working at least part time. Additionally, Wife receives $2,000.00 per month from her mother to pay rent and other household expenses. The Court finds it appropriate to impute minimum wage income to [Wife] in light of her voluntary underemployment and to consider the income [Wife] receives from her own mother as such income substantially reduces Wife's living expenses and should be considered pursuant to Indiana Child Support Guideline 3(A)(2). Accordingly, for purposes of determining child support, Wife' [sic] gross weekly income is set at $755.12 comprised of minimum wage income of $290.00 and other income in the amount of $465.12.

* * *

16. Based upon the foregoing and as set forth in the attached Child Support Obligation Worksheet proposed by Husband which the Court now adopts, Husband shall pay to Wife as current child support the amount of $368.00 per week via wage withholding order. If Husband's current employment is terminated, he shall make such payments through the Clerk of this Court.

* * *

### III. Division of Marital Estate

* * *

21. The assets of the marriage consists of the marital residence . . .; Husband's pension through Ford Motor Company (the "Pension"), and the proceeds of a personal injury/automobile lawsuit which occurred during the marriage (the "Settlement Proceeds"). Based on the evidence before the Court, the Residence has a value of $59,000.00 and a mortgage balance of $56,452.68,

¹ The trial court's decree actually states "$1,3336.38," which is clearly a typographical error. Since the amount is followed by the trial court's computation for finding the amount, we can deduce the amount intended by the trial court by doing the computation: averaging Husband's annual incomes from the prior three years - $71,998.00, $53,091.00, and $83.385.98 – and dividing by fifty-two. This computation gives us a gross weekly income of $1,336.38.

5

resulting in net marital equity in the Residence of $2,547.32; the Pension has a value of $29,689.34; and, the Settlement Proceeds total $3,959.58. The total value of the marital assets is $36,196.24.

22. The Parties' marital liabilities/debts consist of the payoff amount for a 2006 Ford Fusion automobile in the amount of $8,757.00; medical bills . . . totaling $2,290.11; overpaid insurance benefits for the Parties' minor children in the amount of $2,567.28; and a deficiency amount owed on the Parties' Ford Expedition of $13,933.77. The total of the Parties' marital liabilities/debts is $27,548.16.

23. The net value of the marital estate is $8,648.08.

* * *

25. Neither party presented evidence justifying a deviation from the statutory split and the statutory presumption of an equal division of the marital estate shall be employed in this case. Wife is hereby awarded 50% of the marital assets and Husband is hereby awarded 50% of the marital assets. Wife is hereby awarded 50% of the marital debts and Husband is hereby awarded 50% of the marital debts. Based on such division, Wife is awarded $4,324.00 of the net marital estate and Husband is awarded $4,324.00 of the net marital estate subject to the adjustments set forth below based on provisional arrearages at issue in this case.

26. Sole ownership . . . of the Residence is awarded to Husband as Husband is the only party still residing in Indiana and is the only party with the ability to service the debt that remains owed upon the Residence. Husband shall continue to pay the mortgage on or any other debts associated with the Residence and hold Wife harmless upon the same. Wife shall execute a quit-claim deed conveying any interest that she has or may have in the residence to Husband within thirty (30) days of the entry of this Decree. . . .

27. Due [sic] Wife's share of the Marital Estate being reduced by her share of the martial [sic] debt associated with the 2008 Ford Expedition, the 2006 Ford Fusion, the medical bills . . ., and the overpaid insurance benefits for the Parties' children, Husband shall be responsible for all such debts and hold Wife harmless thereon.

28. Husband is awarded the Pension as his sole and separate property and any interest by Wife therein, including any survivorship benefits, is hereby terminated.

29. Husband is awarded as his sole and separate property the remaining Settlement Proceeds currently held in the trust account of Attorney Kristina L. Garza.

30. The Parties shall maintain as their sole and separate property any and all bank accounts currently held in their respective names.

31. Each of the Parties is hereby awarded as their sole and separate property the personal effects and household furnishing currently in their respective

6

possession and shall [sic] each other harmless upon any debts associated therewith.

### IV. Provisional Matters/Contempt Issues

32. Husband incurred income tax liability in the amount of $2,843.89 as the result of Wife failing to comply with this Court's Provisional Order of January 25, 2010 . . ., when she file [sic] her 2009 federal income tax returns separately in lieu of filing jointly with Husband and utilized the entire refund obtained by her without providing Husband with his share. Wife's conduct was willful and in contempt of this January 25 Provisional Order, as a sanction for such contempt, the Court enters judgment in the amount of $2,843.89, representing the tax liability that Husband incurred as a direct result of Wife's contempt, in favor of Husband and against Wife and orders that such amount be deducted from Wife's share of the Martial Estate [sic].

33. Husband incurred $1,600.20 in airfare for the Parties' minor children when he unsuccessfully attempted, pursuant to this Court's Provisional Order of January 25, 2010, to obtain the children from Wife in the State of Nevada. The January 25, 2010 Provisional Order was clear in its directive to the Parties that the minor children be returned to [Husband] and Wife's failure to comply with this Court's order was intentional and willful so as to constitute contempt of this Court. As a sanction for such contempt, the Court enters judgment in [sic] amount of $1,600.20, representing the costs [Husband] incurred as a direct result of Wife's contempt, in favor of Husband and Against Wife and orders that such amount be deducted from Wife's share of the Marital Estate.

34. The Court further finds that Wife is in contempt of this Court's January 25 Provisional Order and its order of February 9, 2011, in that she willfully failed to timely make monthly payments on the Parties' 2008 Ford Expedition motor vehicle with such failure ultimately resulting in the repossession of such vehicle and deficiency amount owed on such vehicle and that she willfully failed to return such vehicle to [Husband] despite the clear and unambiguous orders of this Court. Wife was afforded multiple opportunities to return such vehicle to [Husband]; repeatedly failed to address the required payments; and repeatedly ignored this Court's orders upon such vehicle. Notwithstanding Wife's contempt of this Court as to the 2008 Ford Expedition, no further contempt sanction is entered against Wife in light of the just and equitable distribution of the Marital Estate set forth above and the provisions made therein regarding the marital debts associated with the 2008 Ford Expedition.

35. As to child support arrearages, the Court hereby accepts [Husband]'s calculations as to child support arrearages in this case. Wife's claims of child [support] arrearages are not based on credible evidence. Wife was obligated to pay Husband weekly child support in the amount of $80.55 per week between January 25, 2010, through September 30, 2010, when this Court modified the January 25, 2010 Provisional Order and ordered Husband to pay weekly child

7

support at the Status Hearing held on September 30, 2010. The evidence before the Court clearly established that Wife made none of the child support payments that she was required to make. As such, the child support arrearage owed by Wife to Husband is $3,302.55. On the other hand, Husband was ordered to pay $317.00 per week beginning on September 30, 2010, through the date of the Final Hearing, and as a result of such order, Husband owed $11,095.00 in child support. Based on the evidence before the Court at the Final Hearing, including a printout of support payments made as maintained by the Child Support Clerk of this Court, Husband paid $9,193.00 in child support through the Clerk and directly paid to Wife the amount of $1,049.00, resulting in a child support arrearage of $853.00. Consequently, Wife owes to Husband $2,449.95 in overpaid child support. The Court orders that Wife's share of the Marital Estate shall be reduced further by the overpayment of child support that she received from Husband during the provisional period of this case.

36. Based upon the foregoing reductions from Wife's share of the Marital Estate, Wife owes to Husband the total amount of $2,570.04, which sum is hereby reduced to judgment in favor of Husband and against Wife.

37. As to Wife's request for the retroactive application of child support obligation back to the date that she left the State of Indiana on March 15, 2009, the Court denies the same as such request seeks to impose a child support obligation on Husband prior to the date of the Parties' final separation.

38. As to Wife's claims for contempt of this Court against Husband and/or his counsel in this case, as set forth in Wife's Contempt Citation, the Court holds that neither Husband nor his counsel are in contempt of this Court for the alleged acts set forth in Wife's Contempt Citation.

V. Attorney's Fees

39. The Court having reviewed the evidence . . ., it is hereby ordered that each Party shall bear his or her own fees incurred in or in connection with this case.

Appellant's Appendix at 125-30 (emphasis omitted). Wife now appeals pro se.

Discussion and Decision[2]

I. Standard of Review

---

[2] To the extent Wife makes any additional arguments not discussed in this opinion, such arguments either do not merit discussion on appeal or are deemed waived pursuant to Indiana Appellate Rule 46(a)(8)(A) due to Wife's almost complete failure to cite to the record or pertinent legal authority throughout her brief and reply brief.

Where a trial court has entered findings of fact and conclusions of law,[3] we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, whether the findings supports the trial court's judgment. Oil Supply Co., Inc. v. Hires Parts Serv., Inc., 726 N.E.2d 246, 248 (Ind. 2000). "In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment." Id. (quotation omitted).

## II. Wife's Contempt

Contempt of court arises when a party disobeys a court and undermines the court's authority, justice, and dignity. Henderson v. Henderson, 919 N.E.2d 1207, 1210 (Ind. Ct. App. 2010) (quotation omitted). Indirect contempt is when the actions giving rise to contempt occur outside of the trial court's personal knowledge. Id. "Willful disobedience of any lawfully entered court order of which the offender had notice is indirect contempt." Id. (quoting Francies v. Francies, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), trans. denied). Indiana Code section 34-47-3-5 includes a list of procedural safeguards for those charged with indirect contempt. However, where the requirements of Indiana Code section 34-47-3-5 are not wholly followed, if we are nevertheless satisfied the person charged with contempt

---

[3] Although the trial court's dissolution decree does not refer to "findings of fact" and "conclusions of law" as such, it does ultimately make factual findings and legal conclusions, and we therefore apply this two-part standard of review.

received adequate due process protection, we will affirm a trial court's order of contempt. See Lasater v. Lasater, 809 N.E.2d 380, 386 (Ind. Ct. App. 2004).

Wife lists a series of arguments asserting the trial court's finding her in contempt was in error. First, she argues the provisional order of January 25, 2010, was invalid and unenforceable because she was given insufficient time to respond and/or appear, and therefore finding her in contempt for not adhering to the provisional order was in error. Wife does not cite to any legal authority supporting her argument. Generally, a party waives an issue raised on appeal when the party fails to provide adequate citation to legal authority or portions of the record. App. R. 46(A)(8)(a); see also Smith v. State, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005), trans. denied. Pro se litigants are held to the same standard of rule compliance as are licensed attorneys admitted to the practice of law and pro se litigants must also comply with the appellate rules to have their appeal determined on the merits. Smith, 822 N.E.2d at 203. We will not search the record to find a basis for a party's argument or legal authorities to find legal support for its position. Thomas v. State, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), trans. denied.

Nevertheless, Wife received notice of the provisional hearing five days before it was scheduled to occur. In that time, she obtained private counsel and filed a ten-page complaint for divorce requesting a determination as to child custody, parenting time, division of marital property and debts, child support, and attorney's fees. The record does not reflect that Wife requested a continuance or made any attempt to appear telephonically,[4] as Wife and her

---

[4] In her reply brief, Wife acknowledges she was served with documents pertaining to the provisional hearing, and she contends she contacted Husband's attorney, Garza, in an attempt to receive a continuance.

10

counsel did for the March 2010 conference between the Nevada and Indiana trial courts and for the June 2010 hearing. We therefore reject her contention that the provisional order was invalid and unenforceable.

Second, Wife argues the provisional order was invalid and unenforceable because "there must be proof that the order upon which the contempt proceeding is based has been served upon the accused, or that she was present when the order was made, or that she had knowledge of it," and there is no such proof in this case. Appellant's Opening Brief at 19. Once again, however, Wife fails to cite to any legal authority supporting this argument. Nevertheless, the evidence reveals she had, at a minimum, a general understanding that the provisional hearing resulted in a court order that granted Husband custody of the children because in her ex parte application for an emergency order filed with the Nevada trial court on February 2, 2010, she referenced the Indiana trial court's order and that it granted Husband sole custody of the Children. Thus, the evidence supports the fact that she had knowledge of the Indiana trial court's provisional order.

Third, Wife argues finding her in contempt based upon actions or inactions related to child custody and visitation were in error because the Indiana and Nevada trial courts agreed in June 2010 that Nevada would have jurisdiction of those issues. Therefore, she argues, the Indiana trial court lacked jurisdiction in January 2010 to order Wife to release the children to Husband. However, no agreement regarding jurisdiction had been entered into at the time of the Indiana trial court's provisional order. Such agreement was not accepted by the trial

---

First, we note she does not cite to anything in the record supporting her factual assertion. <u>See</u> Ind. Appellate Rule 46(A)(8)(a). Second, we point out that a continuance should have been sought with the trial court. <u>See</u>

court until June 2010, and therefore it did not apply during the time period when the trial court determined Wife willfully violated its order.

Last, Wife contends the trial court's conclusion that she willfully and deliberately violated its provisional order is in error. In support of her argument, she first contends she could not afford to pay child support as required in the provisional order, and thus failure to pay child support was not deliberate. However, the evidence before the court indicated that Wife was taking care of her mother, who was suffering from Alzheimer's disease, and in return she was receiving approximately $2,000 per month from her mother. Further, as the trial court stated, Wife presented no evidence revealing that she could not work part-time in addition to caring for her mother. Therefore, the trial court's conclusion was not in error.

Wife also claims she did not willfully or deliberately disobey the trial court's order to file income taxes because she filed her taxes separately before the order was issued. However, as Husband points out, Wife could have taken steps to amend her filing or, at the very least, should have shared her refund with Husband. The trial court's decision to find Wife in contempt and sanction her according to the costs associated with her actions was therefore not clearly erroneous.

### III. Child Support

The trial court found it appropriate to base Husband's child support obligation on the average of his income from the previous three years due to the variability in his income. After doing so, the court determined it would base his obligation on a weekly gross income of $1,336.38. Wife argues his "correct" weekly gross income exceeds $1,600.00. Reviewing

---

Ind.Trial Rule 53.5.

12

the record, the evidence submitted showing Husband's income over the previous three years exactly matches the amounts included by the trial court in its findings, and when the income amounts from those years are averaged and configured weekly, $1,336.38 is accurate. Further, given the variability revealed in Husband's income, it was within the trial court's discretion to compute his weekly gross income by averaging his income for the prior three years. See Bower v. Bower, 697 N.E.2d 110, 114 (Ind. Ct. App. 1998) (concluding trial court's averaging of husband's income from previous five years was not an abuse of discretion).

Wife also contends the trial court erred by imputing $755.12 of gross weekly income to her. This amount includes an imputed minimum wage amount and an amount derived from money Wife's mother was contributing to her expenses on a monthly basis. Wife testified that she was working until she began taking care of her mother, that her mother receives $1,653.00 per month in disability income and $419.00 in pension benefits and contributes to their living expenses, and Wife indicated she was physically capable of working. We therefore cannot say that no evidence supports the trial court's findings. Further, it was within the trial court's discretion to impute both amounts as income for Wife. Indiana Child Support Guideline 3(A) allows a trial court to include money received from sources such as operating a business, rent, royalties, in-kind payments, and expense reimbursements in a parent's income for the purposes of determining a child support obligation. It also allows a trial court to impute potential income if the court finds a parent voluntarily unemployed or underemployed. The trial court concluded Wife was able to work

13

in addition to caring for her mother. Thus, the trial court's imputation of minimum wage income was not clearly erroneous.

Wife also argues the trial court's configuring of child support arrearages is incorrect. The trial court found Wife was obligated to pay Husband $80.55 per week from the January 25, 2010, provisional order through the court's September 30, 2010, order when it modified child support such that Husband owed Wife $317.00 per week. Wife does not contest the trial court's finding that she did not pay the $80.55 per week during this period, but rather, she argues Husband should have been obligated to pay her child support beginning November 25, 2009, when he filed his verified petition for legal separation. Wife next argues that her child support obligation should have ceased on February 4, 2010, when the Nevada trial court awarded her custody of the Children, or, alternatively, the conclusion of the time period during which her arrearages accumulated should have been June 21, 2010, rather than September 30, 2010, because June 21 is when the trial court held its hearing regarding jurisdiction. However, Wife cites to no legal authority supporting her contention. See App. R. 46(A)(8)(a). As to her contention that the Nevada trial court's order rendered the Indiana trial court's order ineffective, we disagree. It was not determined until much later which court had jurisdiction over which issues, and thus Wife was obligated to adhere to the Indiana trial court's order. Further, although she asserts the trial court ordered Husband to pay $317 per week in child support as of the day of the June 21 hearing, the record reveals that such order was not filed or received by the trial court, nor recommended by the

magistrate, until November 2010.[5] Thus, we conclude the trial court's conclusion is supported by its findings, which are supported by the evidence.

## IV. Division of Property

Indiana Code section 31-15-7-5 provides a trial court "shall presume that an equal division of the marital property between the parties is just and reasonable" when dissolving a marriage. Further, "this presumption may be rebutted by a party who presents relevant evidence." Id. The trial court concluded neither party rebutted the statutory presumption, and therefore it divided the marital property as evenly as possible. In addition to merely rehashing arguments regarding child custody arrearages and her contempt sanctions, which we have already addressed, Wife argues, without any citations to the record, that Husband pocketed large amounts of income and did not report such assets in his financial disclosure form, and the trial court erred by awarding Husband the entire pension and personal injury proceeds. As to awarding Husband the pension and personal injury proceeds, the trial court's order states that it did so to offset debts which it designated as Husband's in its attempt to divide marital assets evenly. Regarding Husband allegedly pocketing large amounts of cash, because Wife does not point to any evidence supporting her contention that Husband has assets that were not considered in the trial court's division of marital property and Wife otherwise concedes the trial court's list of marital assets and debts is accurate, we cannot

---

[5] To the extent the trial court made a chronological error such that Wife's child support arrearage should have been calculated from its commencement in January 2010 through November 2010, rather than through September 30, 2010, or similarly, that Husband's child support obligation should not have begun until November 2010, we decline to take action as Husband has not made any such arguments himself.

conclude the trial court's division of marital assets was in error. <u>See</u> App. R. 46(A)(8)(a). Thus, the trial court's judgment was not in error.

<h3 style="text-align:center">V. Husband's Contempt and Attorney Sanctions</h3>

Wife asserts a series of alleged ways Husband and his counsel violated local rules and court orders and argues the trial court erred by failing to find Husband in contempt and sanction both Husband and his counsel for said violations. Whether a person is in contempt of a court order is an issue left to trial court discretion. <u>Richardson v. Hansrote</u>, 883 N.E.2d 1165, 1171 (Ind. Ct. App. 2008) (citation omitted). However, Wife fails to cite to any portion of the record or to any legal authority in support of each factual allegation or her overall argument that such actions by Husband required the trial court to find him in contempt. Her argument is therefore waived. <u>See</u> App. R. 46(A)(8)(a); <u>Smith</u>, 822 N.E.2d at 202-03.

<h3 style="text-align:center"><u>Conclusion</u></h3>

The trial court's factual findings are supported by the evidence, and its conclusions are not clearly erroneous based upon its findings. We therefore affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.